**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

JOHN RODNEY PICKWELL,

      Plaintiff,

v.                       Civil Action No. 3:17CV735

COL. NEWTON, et al.,

      Defendants.

F I L E D
SEP 2 5 2019
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

**MEMORANDUM OPINION**

John Rodney Pickwell, a Virginia inmate proceeding pro se and in forma pauperis, filed this 42 U.S.C. § 1983 action. This action proceeds on Pickwell's Amended Complaint (ECF No. 9). In the Amended Complaint, Pickwell argues that, during his incarceration at Riverside Regional Jail ("RRJ"), Defendants Colonel Newton, Major Wilson, and Chaplain Collins violated his right to practice his Asatru religion. The Court construes Pickwell to raise the following claims for relief:[1]

> Claim One:    Defendants placed a substantial burden on Pickwell's exercise of his religion in violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA")[2] by: (a) denying him an evening meal after his "religious fast" (Am. Compl. 2); (b) denying his right to a "dignified disposal of [his] sacrifice" (id.); and,

---

[1] The Court employs the pagination assigned to the parties' submissions by the CM/ECF docketing system. The Court corrects the capitalization, punctuation, and spelling in the quotations from Pickwell's submissions.

[2] 42 U.S.C. § 2000cc-1(a).

|              | (c) failing to allow him to possess and use Asatru religious objects. (Id.) |
| ------------ | -------------------------------------------------------------------------- |
| Claim Two:   | Defendants violated Pickwell's First Amendment[3] right to free exercise of religion by:<br>(a) denying him an evening meal after his "religious fast" (id.);<br>(b) denying his right to a "dignified disposal of [his] sacrifice" (id.); and,<br>(c) failing to allow him to possess and use Asatru religious objects. (Id.) |
| Claim Three: | Defendants violated Pickwell's Fourteenth Amendment[4] right to equal protection by denying "[his] religious group" an evening meal after their fast "as afforded to other religious groups during their fast." (Id.) |

Pickwell seeks injunctive and monetary relief. (Id.) This matter is before the Court on DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT, AND ALTERNATIVELY FOR SUMMARY JUDGMENT filed by Chaplain Collins (ECF Nos. 54, 58), the MOTION FOR SUMMARY JUDGMENT filed by Colonel Newton and Major Wilson (ECF No. 62), and the Court's responsibility to review prisoner actions under 28 U.S.C. §§ 1915(e)(2) and 1915A. Pickwell has filed a RESPONSE TO MOTION FOR SUMMARY JUDGMENT AND DISMISSAL ("Response," ECF No. 65). For the reasons set forth below, the Court will grant the Motions for Summary Judgment.

---

[3] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I.

[4] "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

# I.   STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." Id. at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." United States v. Carolina Transformer Co., 978 F.2d 832, 835 (4th Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). However, a mere "scintilla of evidence" will not preclude summary judgment. Anderson, 477 U.S. at 251 (citing

3

Improvement Co. v. Munson, 81 U.S. (14 Wall.) 442, 448 (1871)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." Id. (quoting Munson, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n.7 (5th Cir. 1992)).

In support of Chaplain Collins's Motion for Summary Judgment, he submits: (1) his own affidavit ("Collins Aff.," ECF No. 59-1); (2) copies of Pickwell's inmate requests, staff's responses, and staff correspondence regarding Pickwell's religious requests (ECF Nos. 59-2, 59-4, 59-5, 59-6); and, (3) a copy of a calendar reflecting Asatru religious events in 2017 (ECF No. 59-3). In support of Colonel Newton and Major Wilson's Motion for Summary Judgment, they submit: (1) the affidavit of Major Wilson ("Wilson Aff.," ECF No. 63-1, at 1-4); (2) a copy of the Virginia Department of Corrections' ("VDOC") Master Religious Calendar (id. at 5-9); (3) the affidavit of Colonel Newton ("Newton Aff.," ECF No. 63-2); and, (4) copies of all exhibits submitted by Chaplain Collins in support of his Motion for Summary Judgment (ECF No. 63-3).

As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. Celotex Corp., 477 U.S. at 324. Pickwell filed an unsworn response, but he has not cited any evidence that he wishes the Court to consider in opposition to the Motions for Summary Judgment.[5] And, although Pickwell's Amended Complaint is notarized, he did not sign it under the penalty of perjury; and the notary did not administer an oath. (Am. Compl. 2.) Thus, the Amended Complaint will not be considered as sworn evidence. See Price v. Rochford, 947 F.2d 829, 832 (7th Cir. 1991) (refusing to consider documents verified in such a manner to avoid the penalty of perjury); Hogge v. Stephens, No. 3:09CV582, 2011 WL 2161100, at *2-3 & n.5 (E.D. Va. June 1, 2011) (treating statements sworn to under penalty of perjury, but made upon information and belief, as "mere pleading allegations") (quoting Walker v. Tyler Cty. Comm'n, 11 F. App'x 270, 274 (4th Cir. 2001)).

In sum, Pickwell has presented no evidence in opposition to the motions for summary judgment. The motions would be granted for that reason alone. However, courts are instructed to accord a measure of leniency to pro se litigants. Therefore, the motions

---

[5] The Court notes that Pickwell submitted an attachment to his Response, entitled "Affidavit of Cost to Date." (ECF No. 65-1, at 1.) The "Affidavit of Cost to Date" only sets forth the "costs, fees, and charges" that Pickwell has accrued in this action, and does not address Pickwell's underlying claims. (See id.)

will be considered on their merits, and all permissible inferences will be extended to Pickwell.

## II.  UNDISPUTED FACTS

### A.  The Parties

"Pickwell was incarcerated at RRJ from July 12, 2017 to March 13, 2018." (Wilson Aff. ¶ 5.) Thereafter, Pickwell "was transferred to the [VDOC]." (Newton Aff. ¶ 6.)

Colonel Newton is "the Superintendent of [RRJ]." (Id. ¶ 1.) Major Wilson is "the Director of Community Corrections and Programs for [RRJ]." (Wilson Aff. ¶ 1.) Chaplain Collins "worked as an Inmate Chaplain at RRJ during the period of time when [Pickwell was incarcerated at RRJ]." (Collins Aff. ¶ 2.) In Chaplain Collins's affidavit, he explains his job responsibilities as follows:

> As chaplain, I did not have any independent authority or ability to approve an inmate's requests for specific books, religious items, sacrificial disposal of food, fasts, need to not speak for nine days or any other requests by Pickwell or other inmates. Such requests were forwarded to RRJ for consideration, input and decision-making, per [RRJ's] policies, procedures and concerns for the safety and security of the jail.

(Id. ¶ 10 (paragraph number omitted).)

### B.  VDOC's Master Religious Calendar

"RRJ adheres to the Master Religious Calendar," which is "provided by the [VDOC]." (Wilson Aff. ¶ 10.) Pursuant to the VDOC's Master Religious Calendar, "there are only two celebrations

6

that are celebrated by members of the Asatru faith, the Summer Solstice and the Yule or Winter Solstice." (Id.; see ECF No. 63-1, at 5-9.) Further, pursuant to the VDOC's Master Religious Calendar, "both celebrations are feasts and neither includes any fasting by practitioners." (Wilson Aff. ¶ 10.)

### C. Pickwell's Religious Requests

On July 14, 2017, Pickwell informed Chaplain Collins that "he practice[d] Asatru and need[ed] a copy of the poetic edda, which was equivalent to a bible." (Collins Aff. ¶ 5.) "[Pickwell's] request was submitted to and approved by [Major Wilson]." (Id.) Approximately "2-3 copies of the poetic edda were obtained and kept in the library for the use of inmates." (Id.)[6] Pickwell also provided Chaplain Collins with a "calendar that had no reference to [the calendar's] source or description of events therein." (Id. ¶ 6; see ECF No. 59-3.)

"On August 10, 2017, Pickwell informed [Chaplain Collins] by email that [Pickwell] would be observing Odin's Ordeal when he [would] go nine days and nights without talking." (Collins Aff. ¶ 7.) Chaplain Collins "requested input from RRJ" regarding Pickwell's request to "go nine days and nights without talking." (Id.) On August 11, 2017, "Major Wilson responded that 'it's fine if [Pickwell] doesn't speak with any inmates but for safety and

_____

[6] The Court omits the secondary citations set forth in Defendants' affidavits.

security reasons he will need to reply if staff ask him a question.'" (Id.)

In emails on August 10 and 11, 2017, "Pickwell [also] informed [Chaplain Collins] that[,] 'in October is our Winter[] Night[s] Fast,'" from October 11 through October 31. (Id. ¶ 8.) Chaplain Collins advised Pickwell that he would forward the requests to Major Wilson "to get some insight from him on how best to handle these events." (ECF No. 59-4, at 1.) On August 11, 2017, Major Wilson responded by email to Chaplain Collins, stating that "the [VDOC] recognizes Summer Solstice and Yuletide as the only celebrated holy days for the Asatru faith." (Collins Aff. ¶ 8.) "Despite [Major Wilson's] requests, [he] was never provided with any documentation from Pickwell which indicated that fasting was a practice of the Asatru faith . . . ." (Wilson Aff. ¶ 11.) With respect to Pickwell's fast, "[n]o special food accommodations were approved if he chose to fast." (Collins Aff. ¶ 8.)

"Pickwell also requested approval for religious items including a Thor's hammer, a set of Runes, an [altar] cloth and a sacrificial bowl known as a Bowli, and to bury his sacrifices outside in the prison yard." (Id. ¶ 9.) "On or about [October 9, 2017], RRJ informed Pickwell that for health and security reasons, food [could] not be buried, runes [were] denied, a plastic hammer [could] be obtained and no books with comb binding[s] [were] acceptable." (Id.) Subsequently, "[b]y email on [October 19,

2017], [Chaplain Collins] followed up with Pickwell" (id.),
responding:

> Mr. Pickwell, I have received [a] response from
> Command staff regarding some of your issues: For Health
> & Security reasons[,] they will not be burying food.
> The Runes as requested are denied, however, I have found
> a complete set on paper that can be provided to you.
> The Hammer as requested has been denied, however if a
> plastic one with a [b]reakaway cord can be located it
> will be allowed. The facility no longer allows materials
> with [c]omb [b]indings[.] To remove the binding
> constitutes modification of the materials and is not
> permitted. That said, I have the Paper Runes available
> if you wish to have them, and, I do not remember seeing
> a Plastic Hammer with '[b]reakaway' cord in the material
> you shared with me. [Do] you have suggestions for other
> sources for the hammer?

(ECF No. 59-6, at 3.)

Thereafter, Major Wilson "met with Pickwell in December 2017
regarding his request for religious items." (Wilson Aff. ¶ 8.)
Major Wilson "informed [Pickwell] that his request for a Thor's
Hammer was approved as long as said hammer was small and plastic
on a breakaway necklace similar to the crosses worn by Christian
inmates." (Id.) Additionally, Major Wilson informed Pickwell
that "[h]is request for an altar cloth was also approved." (Id.)
Further, "Pickwell's request for a bowl was approved and he was
notified that he could purchase a bowl to be used for religious
purposes from the canteen." (Id.) "Pickwell's request for solid
runes was initially rejected and he was provided with paper runes.
However, in February 2018, his request for solid runes was

reconsidered and approved." (Id.) "Pickwell was then informed that he could order said runes from a vendor, Wyrd's Way." (Id.)

With respect to "Pickwell's request to have his food buried by staff members," this was "the only request he made which was denied." (Id. ¶ 9.) Major Wilson "asked Pickwell to suggest a local authority on his faith who could be contacted in an attempt to gain additional information to accommodate Pickwell's request [regarding burying his food], but no one was ever identified by Pickwell." (Id.) As to the issues identified by RRJ with respect to burying food, in Major Wilson's affidavit, he states:

> Burying food on RRJ grounds was both impractical and problematic from a health and safety standpoint. An outdoor area where food could be buried is not readily accessible to the housing unit where Pickwell lived and took his meals. To take the food out to be buried would require a correctional officer to walk from the housing unit; take an elevator to the top floor where administrative offices are located; walk through administration where visitors and other members of the general population gain access to RRJ; exit the building to walk outside along a catwalk; and take multiple stairs down to a grassy area. This distance equates to .2 mile/over 1000 feet. Additionally, burying food on RRJ grounds would likely attract animals, creating a health and safety concern.

(Id.)

## III. RLUIPA AND FREE EXERCISE

### A. RLUIPA

In Claim One (a), (b), and (c), Pickwell contends that Defendants placed a substantial burden on his exercise of his religion in violation of RLUIPA. (Am. Compl. 2.)

#### 1. Monetary Damages & Injunctive Relief

In his Amended Complaint, Pickwell seeks injunctive and monetary relief; however, Pickwell fails to indicate whether he brings this action against Defendants in their individual or official capacities. (Id.) Nonetheless, it is settled that RLUIPA does not authorize a private cause of action for money damages against state officials in their official or personal capacities. Sossamon v. Texas, 563 U.S. 277, 293 (2011) (holding that state officials sued in their official capacities enjoy Eleventh Amendment Immunity against RLUIPA claims for damages); Rendelman v. Rouse, 569 F.3d 182, 189 (4th Cir. 2009) (concluding that, as an exercise of Congress's spending clause authority, RLUIPA does not authorize claims for monetary damages against state officials in their individual capacities); see Haight v. Thompson, 763 F.3d 554, 569-70 (6th Cir. 2014) (concluding that, as an exercise of Congress's authority under the Commerce Clause, RLUIPA did not authorize claims for monetary damages against state officials in

their individual capacities). Accordingly, Pickwell's demands for monetary damages with respect to RLUIPA will be dismissed.

Nor is Pickwell entitled to pursue a claim for injunctive relief under RLUIPA because Pickwell's transfer from RRJ to the VDOC moots the claim for injunctive relief. "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the out-come." Incumaa v. Ozmint, 507 F.3d 281, 286 (4th Cir. 2007) (quoting Powell v. McCormack, 395 U.S. 486, 496 (1969)). "[F]ederal courts have 'no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" Id. (quoting Church of Scientology of Cal. v. United States, 506 U.S. 9, 12 (1992)). Thus, "[o]nce an inmate is removed from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of the claim." Id. at 287.[7] Neither Pickwell, nor the record, establishes ongoing interference with his practice of Asatru. Therefore, Pickwell's demands for

_____

[7] If Pickwell demonstrates that the action is "capable of repetition, yet evading review," his claim may not be moot. Incumaa, 507 F.3d at 289 (quoting Fed. Election Comm'n v. Wis. Right to Life, Inc., 551 U.S. 449, 462 (2007)). Nevertheless, such a showing requires a "demonstrated probability" that the allegedly improper action "will recur again, and to the same complainant." Id. (quoting Murphy v. Hunt, 455 U.S. 478, 483 (1982)). That showing is not made here.

injunctive relief with respect to RLUIPA are moot, and will be dismissed.  Id. at 286-87 (citations omitted) (holding that transfer or release moots claims for injunctive relief).[8]

Moreover, as explained below, Pickwell fails to demonstrate that Defendants substantially burdened his religious exercise.

### 2.   Two-Part Inquiry

RLUIPA provides, in pertinent part, that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person--
> **(1)** is in furtherance of a compelling governmental interest; and
> **(2)** is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).  Thus, to begin, Pickwell must demonstrate that Defendants' actions imposed a "substantial burden" on the exercise of his religion.  To determine whether Pickwell has met this standard, the Court must answer two questions:  "(1) Is the burdened activity 'religious exercise,' and if so (2) is the burden 'substantial'?"  Adkins v. Kaspar, 393 F.3d 559, 567 (5th Cir. 2004); see Couch v. Jabe, 679 F.3d 197, 200-01 (4th Cir. 2012) (employing similar two-part inquiry).

---

[8] The Court notes that Pickwell's request for injunctive relief with respect to his claims under the First Amendment and Fourteenth Amendment are also moot, and will be dismissed.

### a. Whether The Burdened Activities Are a Religious Exercise

"RLUIPA defines the term 'religious exercise' broadly to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" Couch, 679 F.3d at 200 (quoting 42 U.S.C. § 2000cc-5(7)(A)). Pickwell's claims implicate several activities: his ability to receive an evening meal after his "religious fast" (Claim One (a)), "dignified disposal of [his] sacrifice" (Claim One (b)), and possessing and using Asatru religious objects (Claim One (c)). (Am. Compl. 2.) Given RLUIPA's broad definition of religious exercise, the Court will assume that these activities constitute religious exercise. See, e.g., Whitehouse v. Johnson, No. 1:10CV1175 (CMH/JFA), 2011 WL 5843622, at *3 (E.D. Va. Nov. 18, 2011) (assuming inmate's enrollment in seminary course constituted religious exercise for purposes of RLUIPA).

### b. Pickwell Fails To Demonstrate A Substantial Burden On His Religious Exercise

RLUIPA does not define the term "substantial burden." See Couch, 679 F.3d at 200. The United States Court of Appeals for the Fourth Circuit determined that the Supreme Court's jurisprudence interpreting the Free Exercise Clause provides guidance on the issue. See Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006). Thus, the Fourth Circuit has explained that a substantial burden:

> is one that put[s] substantial pressure on an adherent
> to modify his behavior and to violate his beliefs, or
> one that forces a person to choose between following the
> precepts of h[is] religion and forfeiting [governmental]
> benefits, on the one hand, and abandoning one of the
> precepts of h[is] religion . . . on the other hand.

Couch, 679 F.3d at 200 (alterations and omission in original)
(quoting Lovelace, 472 F.3d at 187). To meet the substantial
burden component of the test, the plaintiff "is not required . . .
to prove that the exercise at issue is required by or essential to
his [or her] religion." Krieger v. Brown, 496 F. App'x 322, 325
(4th Cir. 2012) (citing Cutter v. Wilkinson, 544 U.S. 709, 725
n.13 (2005)). However, "at a minimum the substantial burden test
requires that a RLUIPA plaintiff demonstrate that the government's
denial of a particular religious item or observance was more than
an inconvenience to one's religious practice." Smith v. Allen,
502 F.3d 1255, 1278 (11th Cir. 2007) (citing Midrash Sephardi,
Inc. v. Town of Surfside, 366 F.3d 1214, 1227 (11th Cir. 2004));[9]
see Krieger, 496 F. App'x at 326 (affirming grant of summary
judgment where inmate failed to "show that the deprivation of an
outdoor worship circle and the requested sacred items modified his
behavior and violated his religious beliefs" (citing Lovelace, 472
F.3d at 187)). Thus, no substantial burden occurs if the
government action merely makes the "religious exercise more

---

[9] In Sossamon, 563 U.S. at 293, the Supreme Court abrogated
Smith's ultimate holding that RLUIPA allows for monetary damages
against state officials acting in their official capacity.

15

expensive or difficult," but fails to pressure the adherent to violate his or her religious beliefs or abandon one of the precepts of his religion. Living Water Church of God v. Charter Twp. of Meridian, 258 F. App'x 729, 739 (6th Cir. 2007).

Two decisions issued by the Fourth Circuit illustrate a plaintiff's responsibility with respect to demonstrating a substantial burden. In Couch, the plaintiff "testified that the primary religious texts of Islam command that he grow a beard and that the refusal to maintain a beard is a sin comparable in severity to eating pork." Couch, 679 F.3d at 200. The VDOC's grooming policy prohibited inmates from growing beards and enforced this rule by placing a noncompliant inmate in a program that "restricted or limited [the inmate's] access to personal property, movement rights, the right to eat and associate with others, recreation time, and visitation time." Id. at 199. The Fourth Circuit concluded that VDOC's grooming policy and enforcement mechanism "fit squarely within the accepted definition of 'substantial burden'" because it placed substantial pressure on the plaintiff to modify his behavior and violate his beliefs. Id. at 200-01 (citing Warsoldier v. Woodford, 418 F.3d 989, 995-96 (9th Cir. 2005)).

In Krieger, the Fourth Circuit declined to find that an inmate had demonstrated a substantial burden where prison officials denied "his requests for an 'outdoor worship circle' and certain

'sacred items' related to his religious practice of Asatru." _Krieger_, 496 F. App'x at 322-23. The inmate-plaintiff "asserted that deprivation of the outdoor worship circle would require him to pray indoors, and that the 'Blot' ceremony is '_best_ performed outdoors.'" _Id._ at 325 (emphasis added). The Fourth Circuit concluded that the mere denial of the optimal manner for performing the "Blot" ceremony could not demonstrate a substantial burden where the plaintiff "failed to offer any explanation regarding the reason why indoor worship would compromise his religious beliefs." _Id._

_Krieger_ illuminates another consideration in conducting the substantial burden inquiry. The availability to an inmate, in the most general sense, of other means to practice his or her faith is not relevant to the RLUIPA substantial burden inquiry. _See id._; _see also_ _Al-Amin v. Shear_, 325 F. App'x 190, 193 (4th Cir. 2009). "Nevertheless, courts properly consider whether the inmate retains other means for engaging in the particular religious activity, such as the 'Blot' ceremony, in assessing whether a denial of the inmate's preferred method for engaging that religious exercise imposes a substantial burden." _Shabazz v. Va. Dep't Corr._, 3:10CV638, 2013 WL 1098102, at *7 (E.D. Va. Mar. 15, 2013) (citing _Krieger_, 496 F. App'x at 326; _Coleman v. Governor of Mich._, 413 F. App'x 866, 875-76 (6th Cir. 2011)). Applying these principles, the Eighth Circuit has held that an inmate failed to demonstrate

17

that the denial of additional group study time imposed a substantial burden upon his religious exercise where prison officials already provided three hours of group study and worship time and allowed the inmate to study in his cell. Van Wyhe v. Reisch, 581 F.3d 639, 656-57 (8th Cir. 2009). Similarly, the United States Court of Appeals for the Sixth Circuit concluded that prison policies which limited the inmates' access to religious radio and television broadcasts failed to substantially burden the inmates' religious exercise because the inmates "may receive religious literature via the mail and may receive visitors at the prison to discuss their religious beliefs." Coleman, 413 F. App'x at 876. As explained below, in light of the foregoing principles, Pickwell has not demonstrated any substantial burden upon his religious exercise with respect to Claim One (a), (b), and (c).

### i. Evening Meal After Fasting

In Claim One (a), Pickwell contends that Defendants substantially burdened his exercise of his religion by denying his request to receive an evening meal during his fast for "Winter Nights." (Am. Compl. 1-2.) Pickwell says that "the reason an evening meal was needed during Winter Nights was [he] would be just coming off a nine day and night fast for Odin's Ordeal from September 21st to the 30th," and during Odin's Ordeal, he would "not [be] eating at all." (Id. at 1.)

18

The evidence submitted by the Defendants establishes that, although "[n]o special food accommodations were approved if he chose to fast," Pickwell was permitted to fast and to participate in the observance of Winter Nights. (Collins Aff. ¶ 8.) Pickwell has offered no evidence that his failure to receive a special evening meal imposed a substantial burden on his participation in the fast or in the celebration of Winter Nights. See Norwood v. Strada, 249 F. App'x 269, 270-72, 270 n.1 (3d Cir. 2007) (finding no substantial burden when the inmate was denied seven "religiously certified (halal) meal[s]" during a three-day lockdown); United States v. Roane, 378 F.3d 382, 400-01 (4th Cir. 2004) (concluding that "'[a]iry generalities [and] conclusory assertions . . . [do] not suffice' to stave off summary judgment . . . ." (alterations in original) (citation omitted)). Thus, Pickwell has failed to demonstrate that he was pressured to modify his behavior and to violate his beliefs when his request for a special evening meal was denied. See Krieger, 496 F. App'x at 326. Accordingly, Claim One (a) will be dismissed.

### ii. Disposal of Pickwell's Sacrifice

In Claim One (b), Pickwell contends that Defendants placed a substantial burden on the exercise of his religion by denying his right to a "dignified disposal of [his] sacrifice," which is the "equivalent to denying [him] prayer." (Am. Compl. 2.)

The Defendants have demonstrated that there are varied reasons for not making the burials that Pickwell sought. Pickwell has introduced no evidence to the contrary. Nor has he proffered evidence about how the Defendants imposed a substantial burden on his ability to practice his religion. (Id. at 1-2.) Rather, his contention is an unsupported conclusory statement. That is not enough to survive summary judgment. See Krieger, 496 F. App'x at 326 (concluding that an inmate's "blanket assertion" "that the sacred items were 'necessary' to perform 'well-established rituals'" was insufficient to establish a substantial burden when the inmate failed to "identify those rituals, or explain why the absence of the sacred items had an impact on the rituals and violated his beliefs"); DeSimone v. Bartow, 355 F. App'x 44, 46 (7th Cir. 2009) ("noting the insufficiency of a plaintiff's 'unreasoned say-so' to create a triable issue" (quoting Borzych v. Frank, 439 F.3d 388, 390 (7th Cir. 2006))); Marron v. Jabe, No. 1:12CV468 (TSE/TRJ), 2014 WL 585850, at *5 n.5 (E.D. Va. Feb. 14, 2014) (citations omitted). Moreover, Pickwell fails to demonstrate that Defendants' refusal to allow him "to dispose of [his] sacrifice in a dignified manner" (Am. Compl. 1) substantially pressured him "to modify his behavior and to violate his beliefs." Couch, 679 F.3d at 200 (quoting Lovelace, 472 F.3d at 187); see Krieger, 496 F. App'x at 326. Because Pickwell has not offered

evidence that Defendants placed a substantial burden on his religious exercise, Claim One (b)) will be dismissed.

### iii. Asatru Religious Objects

In Claim One (c), Pickwell contends that Defendants placed a substantial burden on the exercise of his religion by failing to allow him to possess and use the following Asatru religious objects: "a Thor's Hammer, a set of Runes, an Altar cloth, and a sacrificial bowl known as a Bowli." (Am. Compl. 1-2.)

To begin, and, contrary to Pickwell's unsupported assertion, the evidence establishes that Defendants approved Pickwell's requests for the requested Asatru religious objects. Specifically, Pickwell's "request for a Thor's Hammer was approved as long as said hammer was small and plastic on a breakaway necklace similar to the crosses worn by Christian inmates." (Wilson Aff. ¶ 8.) Pickwell's requests for an altar cloth and Bowli were approved. (Id.) And, although "Pickwell's request for solid runes was initially rejected and he was provided with paper runes . . . . in February 2018, his request for solid runes was reconsidered and approved." (Id.) That undisputed record alone shows that Defendants are entitled to summary judgment on Claim One (c).

Moreover, to the extent that Pickwell intends to argue that any delay in the approval of the requested Asatru religious objects substantially burdened his exercise of his religion, that

assertion fails because Pickwell has not shown the religious significance of the requested objects or how a slight delay in receiving them placed a substantial burden on the exercise of his religion. See Krieger, 496 F. App'x at 326; see also DeSimone, 355 F. App'x at 46 (citation omitted); Marron, 2014 WL 585850, at *5 n.5 (citations omitted). Therefore, Pickwell has failed to demonstrate that any delay in the approval of his requested Asatru religious objects pressured him to modify his behavior and to violate his beliefs. See Krieger, 496 F. App'x at 326.

For the foregoing reasons, Claim One (c) will be dismissed.

### B. Free Exercise

In Claim Two (a), (b), and (c), Pickwell contends that Defendants violated his First Amendment right to free exercise of religion by engaging in the same three actions set forth in Claim One (a), (b), and (c). (See Am. Compl. 2.)

In order for Pickwell to survive summary judgment on the First Amendment claims, Pickwell must demonstrate that Defendants' conduct substantially burdened his religious exercise. Whitehouse, 2011 WL 5843622, at *5. "RLUIPA provides considerably more protection for an inmate's religious exercise than does the Free Exercise Clause of the Constitution of the United States." Id. at *5 (citing Lovelace, 472 F.3d at 186). Thus, "[w]here an inmate has not put forth sufficient evidence under RLUIPA to

demonstrate a substantial burden on his religious exercise, his claim fails under the Free Exercise Clause of the First Amendment as well." Van Wyhe, 581 F.3d at 657-58 (citing Patel v. U.S. Bureau of Prisons, 515 F.3d 807, 813 (8th Cir. 2008)). As explained above, Pickwell has failed to demonstrate a substantial burden on his religious exercise. Accordingly, Claim Two (a), (b), and (c) will be dismissed.

## IV. EQUAL PROTECTION

Pursuant to the Prison Litigation Reform Act, the Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2); see 28 U.S.C. § 1915A. The first standard includes claims based upon "an indisputably meritless legal theory," or claims where the "factual contentions are clearly baseless." Clay v. Yates, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R.

Miller, _Federal Practice and Procedure_ § 1356 (1990)).    In
considering a motion to dismiss for failure to state a claim, a
plaintiff's well-pleaded allegations are taken as true and the
complaint is viewed in the light most favorable to the plaintiff.
_Mylan Labs., Inc. v. Matkari_, 7 F.3d 1130, 1134 (4th Cir. 1993);
_see also Martin_, 980 F.2d at 952.  This principle applies only to
factual allegations, however, and "a court considering a motion to
dismiss can choose to begin by identifying pleadings that, because
they are no more than conclusions, are not entitled to the
assumption of truth." _Ashcroft v. Iqbal_, 556 U.S. 662, 679 (2009).

While the Court is obligated liberally to construe _pro se_
complaints, _Gordon v. Leeke_, 574 F.2d 1147, 1151 (4th Cir. 1978),
it does not act as the inmate's advocate, _sua sponte_ developing
statutory and constitutional claims the inmate failed to clearly
raise on the face of his complaint.  _See Brock v. Carroll_, 107
F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); _Beaudett
v. City of Hampton_, 775 F.2d 1274, 1278 (4th Cir. 1985).

In Claim Three, Pickwell contends that Defendants violated
his Fourteenth Amendment right to equal protection by denying
"[his] religious group" an evening meal after their fast "as
afforded to other religious groups during their fast."   (Am.
Compl. 2.)   Pickwell contends that he requested to "receive an
evening meal, as Muslims do during Ramadan." (_Id._ at 1.)

The Equal Protection Clause of the Fourteenth Amendment commands that similarly situated persons be treated alike. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982)). To make out an equal protection claim, Hicks must allege facts that indicate: "that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). Here, although Pickwell alleges that he requested to "receive an evening meal, as Muslims do during Ramadan" (Am. Compl. 1), Pickwell fails to allege any facts to plausibly suggest that any such "unequal treatment was the result of intentional or purposeful discrimination." Morrison, 239 F.3d at 654. Accordingly, Claim Three will be dismissed without prejudice as legally insufficient.

## V.   CONCLUSION

For the foregoing reasons, DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT, AND ALTERNATIVELY FOR SUMMARY JUDGMENT filed by Chaplain Collins will be granted with respect to the request for summary judgment (ECF No. 58) and will be dismissed as moot with respect to the request for dismissal for failure to state a claim (ECF No. 54). Colonel Newton and Major Wilson's MOTION FOR SUMMARY JUDGMENT (ECF No. 62) will be granted. Claim One (a),

(b), and (c), and Claim Two (a), (b), and (c) will be dismissed.
Claim Three will be dismissed without prejudice.  The action will
be dismissed.

The Clerk is directed to send a copy of this Memorandum
Opinion to Pickwell and counsel of record.

It is so ORDERED.

/s/  _R E P_

Robert E. Payne
Senior United States District Judge

Date:  _September 24, 2019_
Richmond, Virginia